LYDIA A. GLASS v. WILLIAM GLASS AND ARCHIBALD GLASS.

*Bill for relief against mortgage—Sufficiency of pleading—Parties.*

Where a bill for relief against a mortgage neither counts upon nor mentions an alleged assignment to the complainant of a right to redeem, such assignment is outside the issue.

A firm of brothers were indebted to two other brothers. One of the partners joined with his wife in a mortgage to the other brothers to

cover all sums which the firm then owed or might thereafter owe them. The firm afterwards dissolved, and in the agreement for dissolution the remaining partner bound himself "to *vest* a mortgage on his interest" in the property already mortgaged, in the two broth\_ers to whom it had been mortgaged "in consideration that they \* \*. shall fully obligate themselves to secure to" the retiring partner the performance of this agreement. The remaining partner afterwards quit-claimed the equity of redemption to the mortgaged property to his wife, and she filed a bill against the mortgagee brethren, asking that the mortgage might be discharged, or that the amount due might be ascertained and she allowed to redeem. *Held* that under the dissolution agreement the mortgagees were trustees of the mortgage for the retiring partner and he should have been made a party defendant to the bill; farther, an accounting should be had with regard to the transactions to which the mortgage directly applied, and another, if necessary to adjust the claims of the cestui que trust.

Appeal from Wayne. (Jennison, J.)  Apr. 5.—Apr. 11.

BILL to discharge mortgage or for leave to redeem.  Complainant appeals.  Dismissal affirmed.

*Erwin Palmer* and *Geo. Gartner* for complainant.

*D. Bethune Duffield* for defendants.  Courts will take notice of the omission of proper defendants in the bill, though no demurrer be interposed, when it is manifest that the decree will have the effect of depriving them of their legal rights: *Herrington v. Hubbard* 1 Scam. 571; *Payne v. Avery* 21 Mich. 524; *Bonham v. Galloway* 13 Ill. 75; Jennison's Ch. Pr. 22; Puterbaugh's Ch. Prac. 38; *Prentice v. Kimball* 19 Ill. 323; *Jenks v. Hathaway* 48 Mich. 539.

GRAVES, C. J.  March 1, 1874, James Glass, complainant's husband, and Archibald, his brother, were doing business in Detroit, as partners, under the name of James Glass & Bro., and becoming embarrassed they compromised with their creditors.  The defendants, who were brothers of James and Archibald, residing at London in Ontario, were already creditors, and they also became indorsers on several notes given on the compromise.

April 24, 1874, complainant and her husband James,

executed to the defendants a mortgage on the husband's undivided half of the Preston block property in the city of Detroit; and after providing for the payment of seven thousand dollars in one year from the date, the condition proceeded as follows :

" The design of this mortgage is to cover all sums that James Glass, or James Glass & Bro., now owe said William Glass and Samuel Glass, Jr., and all sums that they may owe them in the future, and shall pay and discharge all notes dated March 1st, 1874, indorsed by the said parties of the second part, given in compromise by said first parties of their indebtedness, then these presents shall cease and be null and void."

September 8, 1874, the brothers James and Archibald dissolved, and the latter assigned to James his "interest in the business, good-will and assets, real or personal," except his share in the west half of lot five, south of Jefferson avenue, military reservation. The sixth article in the dissolution agreement was as follows: "*Sixth*. To secure the performance on his part, of the contract, said James agrees to vest a mortgage on his interest in the property in Detroit known as the Preston block, in William and Samuel Glass, in the sum of three thousand dollars, ($3000) in consideration that they, the said William and Samuel, shall fully obligate themselves to secure to said Archibáld the performance of this agreement on the part of said James, and shall indemnify and save harmless the said Archibald from any and all debts contracted by the firm of James Glass & Bro., and from all costs, liability, or loss arising out of any transactions of the firm of James Glass & Bro., or James Glass, while such firm was in existence."

The instrument of May 5th, 1876, referred to in the testimony as an assignment from James to complainant of a right to redeem the mortgage, is not counted on nor mentioned in the bill. It is, consequently, a matter outside the issue.

February 1st, 1879, the husband, James, quitclaimed the equity of redemption to complainant, and she subsequently filed this bill for alternative relief. *First*, she claimed to

have the mortgage discharged on the ground that the condition had been complied with; *second*, but in case of being found mistaken in this, she then asked that the court would ascertain what remained, and allow her to redeem on payment of it. The evidence was taken in open court, and after hearing on the merits the circuit judge dismissed the bill without prejudice and the complainant appealed.

The controversy must be viewed as it appears in the record, and not as it might appear under other circumstances. In my judgment Archibald Glass was a necessary party, and this seems to have been the opinion of the circuit judge. In view of the state of things to which it referred, and the singular phraseology, the stipulation in the dissolution agreement made by James and Archibald Glass was ambiguous; but whatever was its proper construction, it was binding in equity on James, the grantor of complainant, and on his interest, and there is considerable evidence that complainant was cognizant of it prior to the quitclaim deed, and actually claimed that it did not affect the mortgaged premises.

The conduct of the parties to the transaction is not without influence on the question of construction. They intended it should have immediate operation as security, and they carried themselves accordingly. All the brothers supposed, as it appears, that, subject to the defendant's rights as mortgagees, the mortgage was to be further held by the latter in trust to secure Archibald, and was to be regarded as a mortgage in trust to them for the benefit of Archibald, and to be so applied and enforced in equity. And acting on this idea, as may be inferred, Archibald proceeded to deposit this stipulation with the defendants, the mortgagees, in order that, in equity, it should attach to the mortgage, and they received it and appear to have accounted themselves as trustees under the arrangement.

On the whole, it appears to me there is room in reason for fairly contending that an equity was created in Archibald's favor to have the mortgage stand in the defendant's name, but in trust for him, and as security in his behalf for

the matter stated in the sixth article of the dissolution agreement. Admitting this view, it follows that no attempt at a positive decision of this question is practicable on this record and with these parties. At the same time it is not perceived how the mortgage can be got rid of without an adjudication of that subject. That Archibald asserts a claim is not left to hearsay or speculation or conjecture. He swears to it himself, and neither his rights nor the equitable liabilities of the defendants in that direction can be fore-closed in a case in which he is not a party. I think he ought to have been joined, and that a regular accounting should have been had touching the transactions to which the mortgage was directly applicable, and also another if necessary to adjust the claims of Archibald.

Looking at the present record it would be rash, perhaps, to conclude that there is no subsisting right in defendants in character of mortgagees; but, in the view I feel constrained to take, the case is not ripe for judgment on that question, and ought not to be prejudiced by any emphasized utterance upon it.

The decree below must therefore be affirmed with costs.

The other Justices concurred.